ARMOUR & CO. ET ALS. v. PEOPLES LAUNDRY COMPANY ET ALS.

(Filed 31 May, 1916.)

### 1. Liens—Mortgages—Priorities—Fraud—Prior Mortgages.

The dominant owner and director in a corporation of three obtained its note and mortgage for a preëxisting debt, hypothecated them as collateral to his personal note with R. Bank, and thereafter with M. Bank, for previous loans made by it to the corporation, but subject to the lien of the R. Bank; and subsequently pledged the same security to the corporation's debt to J. Still later he procured the M. Bank to increase its loan to the corporation upon fraudulent representations that the R. Bank should be paid in full, and for this increased amount the corporation gave a direct mortgage on its property to the M. Bank, which thereupon can-

celed its prior notes: *Held,* the second transaction with the M. Bank did not invalidate its lien under the assigned mortgage, and the corporation having become insolvent, the receiver should pay out the funds upon the following priorities: first, the debt to R. Bank; second, to the M. Bank to the extent of the amount of the lien under the assigned mortgage, and, third, the debt due to J.

### 2. Mortgages—Conditional Sales—Priorities.

A contract of conditional sale of personalty retaining title properly registered has a priority over liens by mortgage on corporation property subsequently made and registered.

### 3. Corporations—Receiver's Certificates—Liens—Priorities.

Where a receiver is appointed for an insolvent corporation to continue it in operation as a going concern, and finds that this is necessary to produce the best results for the creditors, the receiver's certificate issued accordingly by order of the court takes priority over the corporation's prior mortgage or other indebtedness; but otherwise if it has been so issued by the receiver without order of court, or without the court's approval.

APPEAL by sundry creditors of defendant from *Peebles, J.,* at November Term, 1915, of WAKE.

*Jones & Bailey for Raleigh Banking and Trust Company.*
*John W. Hinsdale for American Laundry Machinery Company.*
*S. Brown Shepherd for Johnson & Johnson Company.*
*Manning & Kitchin for Merchants National Bank.*
*Clark & Broughton for Morris & Eckles Company.*

CLARK, C. J. This was a creditor's bill to wind up the Peoples Laundry Company, an insolvent corporation. W. S. West on 5 May, 1914, was appointed permanent receiver and authorized to carry on the business "as a going concern."

On 1 April, 1913, the Peoples Laundry Company executed a note to J. R. Golter for $9,041.25, with interest from that date, and secured the same by a mortgage on all its property, a large part of this amount being for a prior indebtedness. The referee found that Golter owned all the stock of the company except thirty-two shares of par value at $10 each; that the stockholders in the meeting authorized the mortgage to Golter, he taking a part in the meeting and without him there being no quorum present. The mortgage recites that it was authorized at a directors' meeting. There were three directors, Golter and two others, one of whom owned five shares and the other one share, which had been given them by Golter to enable them to qualify as directors. There were other creditors at the time besides Golter, including the American Laundry Machinery Company, one of the appellants, whose claims have never been paid.

On 17 April, 1913, J. R. Golter executed to the Raleigh Banking and Trust Company his negotiable promissory note for $5,000 and deposited as collateral security the above mortgage note of the Peoples Laundry to him for $9,041.25. However, subject to impeachment of said note, it is found as a fact that the said bank took said collateral security before due, for value, in good faith, and without any notice of any defect therein. The referee finds that there is now due on said note the sum of $3,000 and interest, which is due to said bank, and there is no contest as to the validity of said debt.

On 23 December, 1913, the Peoples Laundry executed to the Merchants National Bank its negotiable promissory note for $3,250, and on 10 February, 1913, its negotiable promissory note for $3,000, and on 24 February its further negotiable note for $1,250. All three of said notes were signed by J. R. Golter individually as surety. On 19 June, 1913, said Golter, to secure said notes (there having been paid thereon only $500, credited upon the last named note) executed an assignment and conveyance of the interest of said Golter in the note and mortgage to him from the Peoples Laundry for $9,041.25, subject only to the prior assignment of the same to the Raleigh Banking and Trust Company, which last assignment was duly recorded.

On 23 December, 1913, said Golter represented to the Merchants National Bank that the only encumbrance on the property of the Peoples Laundry was a debt of $4,000 to the Raleigh Banking and Trust Company, secured by said note and mortgage of $9,041.25, and that there would be nothing due on said last note and mortgage after the payment of said $4,000. Relying upon such representations, the Merchants National Bank on 22 December, 1913, accepted a new note of the Peoples Laundry for $8,500, indorsed by said Golter and A. Curcio individually, and secured by a mortgage of the same date on the entire property of the Peoples Laundry duly recorded. The previous notes of $3,250, $3,000, and $1,250 (on which $500 had been paid), were canceled, as was also the previous assignment of Golter's interest in the $9,041.25 note and mortgage which had been previously given as collateral security, subject to the indebtedness of the Raleigh Banking and Trust Company. The difference in the amount of the two notes was money loaned by the Merchants National Bank, and of which some $1,300 was applied to reduce balance due Raleigh Banking and Trust Company to $3,000.

On 22 November, 1913, J. R. Golter had executed and delivered for value to Johnson & Johnson Company his negotiable promissory note for $1,500, with the provision that it was secured by mortgage of even date on personal property and also by the mortgage note from the Peoples Laundry for $9,041.25, but subject to a prior lien of the Merchants National Bank for $5,041.25.

On 19 March, 1914, Golter gave notice to the Raleigh Banking and Trust Company that Johnson & Johnson were entitled to the balance of his interest in said $9,041.25 note and mortgage, the indebtedness to said Merchants National Bank having been canceled.

On 4 December, 1912, the Peoples Laundry purchased from the American Laundry Machinery Company certain property for $1,489.90, the title being retained by the vendor and the contract of conditional sale being duly recorded. On this conditional sale there is still due a balance of $289.90 and interest, all of which property was embraced in the mortgage of $9,041.25 above mentioned. The American Laundry Machinery Company also claims a balance of $585 on a conditional sale registered 13 June, 1913.

Under special orders of the court, the receiver issued certificates of indebtedness incurred in the execution of his trust for $1,250.

The receiver was directed to carry on the business of the Peoples Laundry as a "going concern," and there was certain other indebtedness which as the referee finds is "due and unpaid and which was necessarily incurred by the receiver in good faith, in keeping the plant going and in running order. All of these items are for repairs and supplies and expenses necessary in the actual operation of the laundry." These debts are held by Morris & Eckles Company and others, but no receiver's certificates were issued therefor.

The above is a condensed statement of the findings of fact in the very excellent report stated by the referee, Joseph B. Cheshire, Jr.

Upon exceptions filed, the judge decreed that out of the proceeds of the sale of the defendant's property there should be paid the costs of the action, the allowance to the referee and the stenographer and to the commissioners for making the sale, and after the discharge of said "overhead charges" the proceeds should be disbursed in the following order:

1. The receiver's certificates, $1,250 and interest, which had been issued by the order of the court, and the amount due the owner of the property, S. B. Shepherd, $805 for the rent thereon. Out of the remainder of said proceeds there should be paid to the Raleigh Banking and Trust Company the sum of $3,000 and interest, the balance due upon the mortgage which it held as collateral security, subject, however, to the prior payment to the American Laundry Machinery Company of $289.90, which was secured by the recorded conditional sale of certain personal property which had been later embraced in the $9,041.25 mortgage. The $585 also due this company by conditional sale was not registered till after registration of the $9,041.25 mortgage, and has no priority.

2. The payment to the Merchants National Bank of $5,081 and interest thereon.

It appearing to the court that these sums would consume all the proceeds of the sale, and that there were no other assets out of which any further sum can be realized, it was directed that the receiver should be discharged and the final judgment recorded.

The court found as a fact that the surrender, 22 December, 1913, by the Merchants National Bank of its interest as holder of the collateral security in the $9,041 mortgage was procured by the false statement of Golter that said security would be canceled by the payment to the Raleigh Banking and Trust Company of the balance then due them, in reliance upon which the Merchants National Bank released its interest in said $9,041.25 mortgage and took a new note for $8,500, receiving no money, but, on the contrary, increasing its indebtedness by the loan of nearly $2,000, of which some $1,300 was paid to the Raleigh Banking and Trust Company, reducing the balance due them from $4,000 and interest to $3,000 principal, and that inasmuch as the note to the Johnson & Johnson Company expressly stated therein that it was subject to the payment to the Merchants National Bank of the sum of $5,081, the court held that the debt due the Merchants National Bank, referred to in said note to Johnson & Johnson Company, was not in fact paid, but was included in the larger note of $8,500, and correctly held that the claim of the Merchants National Bank to the extent of said $5,081 and interest was not displaced by said transaction and should be paid in preference to said Johnson & Johnson Company's claim.

The court further held that the expenses incurred by the receiver without express order of the court and without reporting the same to the court, and for which no certificates of indebtedness were issued, were subordinate to the rights of the lien creditors and other claims above given priority.

The exception that the receiver's certificates, issued by order of the court, could not take priority over prior indebtedness of defendant cannot be sustained. The court adjudged that it was necessary for the protection of the fund that the property should be placed in the hands of a receiver and so managed as to produce the best results for the creditors. This could not be done without the expenditure of the sums for which the court in its sound judgment ordered the receiver's certificates to be issued.

Upon consideration of all the exceptions, the judgment is
Affirmed.